﻿Citation Nr: AXXXXXXXX
Decision Date: 12/18/18 Archive Date: 12/17/18

DOCKET NO. 180620-263
DATE: December 18, 2018
ORDER
Entitlement to an effective date earlier than May 27, 2010, for the award of a 70 percent disability rating for post-traumatic stress disorder (PTSD) with panic attacks and major depressive disorder, is denied.
Entitlement to a total disability evaluation based on individual unemployability (TDIU) is denied.
FINDINGS OF FACT
1. A December 2010 rating decision granted entitlement to service connection for PTSD with depression and anxiety, effective May 27, 2010; the Veteran initiated an appeal of the rating assigned, but did not initiate an appeal of the effective date assigned for the award of service connection. A March 2016 rating decision increased the rating to 70 percent, effective September 11, 2012. A May 2017 rating decision, implementing an October 2016 Board decision, assigned the 70 percent rating from May 27, 2010 for PTSD with panic attacks and major depressive disorder.
2. The Veteran’s service-connected disabilities do not render him unable to secure or follow a substantially gainful employment at any point throughout the appeal period from May 27, 2010.
CONCLUSIONS OF LAW
1. An effective date prior to May 27, 2010 is not warranted for the award of a 70 percent rating for PTSD with panic attacks and major depressive disorder. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.151, 3.155, 3.400, 20.302 (2018); Rudd v. Nicholson, 20 Vet. App. 296 (2006).
2. The criteria for the assignment of a TDIU have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16 (2018).
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from May 1968 to July 1972. 
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
By way of background, in a December 2010 rating decision, the Agency of Original Jurisdiction (AOJ) granted entitlement to service connection for PTSD with depression and anxiety and assigned a 30 percent effective date in May 27, 2010. A March 2016 rating decision increased the rating to 70 percent disabling, effective September 11, 2012. In October 2016, the Board granted an initial rating of 70 percent for post-traumatic stress disorder (PTSD) with panic attacks and major depressive disorder with symptoms of anxious distress, effective May 27, 2010, and remanded the issues regarding entitlement a rating in excess of 70 percent and entitlement to a TDIU. In a May 2017 rating decision, the AOJ implemented the initial 70 percent rating, effective May 27, 2010. 
In March 2018, the Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the June 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. In June 2018, the Veteran (1) timely appealed this RAMP rating decision to the Board, (2) requested the Evidence Submission process, and (3) specifically identified the issues as entitlement to individual unemployability and entitlement to an earlier effective date for the increased rating of 70 percent for PTSD. These are the only two issues currently before the Board. The Veteran timely submitted additional evidence and argument with his June 2018 election form which is considered below. 
The Board notes that if it is the Veteran’s intent to appeal the AOJ’s June 2018 denial of a disability rating higher than 70 percent for his service-connected psychiatric disability, he may still opt for review of that determination by the Board if he files his request within one year of notice of the June 2018 determination.
The Board acknowledges that in August and October 2018, the Veteran’s attorney inquired about the status of the Veteran’s claims seeking service connection for hypothyroidism and sleep apnea. In June 2017, these issues were certified on appeal. See June 2017 VA Form 8. In March 2018, the Veteran opted for a Higher Level Review under RAMP. In a March 2018 letter, the Veteran was notified that his claims for service connection for sleep apnea and hypothyroidism were converted under RAMP. The AOJ then adjudicated these claims under Higher Level Review in March 2018. In April 2018, the Veteran submitted a supplemental claim with respect to these issues, along with additional evidence. These claims are not before the Board and are currently awaiting adjudication by the AOJ.

1. Entitlement to an effective date earlier than May 27, 2010 for the award of a 70 percent disability rating for PTSD with panic attacks and major depressive disorder is denied.
On May 27, 2010, VA received the Veteran’s claim of entitlement to service connection for PTSD, which it granted in a December 2010 rating decision. The AOJ assigned a 30 percent initial rating, effective May 21, 2010. In a notice of disagreement received in December 2010, the Veteran initiated an appeal with respect to the rating assigned only. He did not initiate an appeal of the effective date for the grant of service connection within one year following the December 2010 rating decision, and the decision on that aspect of the matter became final. 
A March 2016 rating decision increased the Veteran’s disability rating to 70 percent, effective September 11, 2012. The Board subsequently awarded an initial rating of 70 percent, effective the date of his original claim, May 27, 2010. The Veteran has been assigned an initial uniform rating of 70 percent effective since the date of service connection. 
The effective date of an increased rating cannot be earlier than the effective date of service connection, as it is an award dependent upon a service-connected disability. The law provides that an effective date for a claim for increase is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(o). Here, the Veteran’s entitlement to a 70 percent rating for PTSD with panic attacks and major depressive disorder arose with the award of service connection, the effective date of which was previously finally decided. Accordingly, no earlier date can be assigned, and the claim must be denied.
The Board adds that, to the extent that the Veteran's appeal in this matter may be read as an appeal for an earlier effective date for the grant of service connection, the Board notes that any attempt to raise that issue now is, essentially, a freestanding claim for an effective date, and not contemplated under the law. See Rudd v. Nicholson, 20 Vet. App. 296 (2006) (holding that a freestanding claim for an earlier effective date is a nullity, and the only basis for challenging the effective of a now final decision date is CUE). Indeed, as noted above, although the Veteran initially disagreed with the AOJ’s initial rating, he did not initiate an appeal with respect to the award of service connection for the disability, the rating decision as to that matter is final. 
In light of the foregoing, the claim seeking an effective date prior to May 27, 2010, for the award of a 70 percent rating for PTSD with panic attacks and major depressive disorder must be denied because the AOJ has already assigned the earliest possible effective date possible under governing law. The Board is bound by the laws and regulations of VA regarding finality of prior decisions, which are is dispositive in this matter. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).
2. Entitlement to a TDIU is denied.
The Veteran and his attorney claim that the Veteran is entitled to a TDIU due to the combined effects of his service-connected disabilities on his ability to work. 
VA will grant TDIU when the evidence shows that the Veteran is precluded, by reason of service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16 (2018).
The schedular TDIU subsection provides that a total disability rating for compensation may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. If there is only such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 
Marginal employment shall not be considered substantially gainful employment for purposes of entitlement to TDIU. Id. Marginal employment generally shall be deemed to exist when a veteran’s earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Id. Marginal employment may also be established, on a facts-found basis, when earned annual income exceeds the poverty threshold, including but not limited to employment in a protected environment such as a family business or sheltered workshop. Id. Consideration must be given in all claims to the nature of the employment and the reason for termination. Id. 
Age may not be considered as a factor when evaluating unemployability or intercurrent disability, and it may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19. There must be a determination that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age or a nonservice-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16.
The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question, however, is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).
The Veteran is currently service-connected for PTSD with panic attacks and major depressive disorder with symptoms of anxious distress, chronic renal insufficiency, migraine headaches, tinnitus, and bilateral hearing loss. The schedular requirements for a TDIU have been met since May 27, 2010, the date when the Veteran had a single disability ratable at 60 percent or more.
The question that remains, then, is whether the Veteran’s service-connected disabilities preclude him from being able to secure and follow substantial employment. 
In order to ascertain the Veteran’s employment history, skills, and education, the Board has reviewed VA Form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability, which the Veteran submitted in March 2016. On this form, the Veteran indicated that he had been self-employed since June 2013 and worked 16-20 hour per week, three to four days a week, and earned a maximum of $2,500.00 per month. He reported earned income for the past 12 months as $29,375. He completed four years of college. He earned a virtual online teaching certificate following training from February to August 2015. He indicated that his service connected PTSD with depression, migraines, and chronic kidney disease affected his full-time employment on March 15, 2010, and that he last worked full-time on May 31, 2013. 
The Board initially notes that prior to May 31, 2013, the Veteran worked full-time as a IT product manager. Social Security records submitted by the Veteran indicate that the Veteran earned a yearly salary over $100,000 in 2010, 2011 and 2012. In 2013, the year he stopped working full time, he earned $63,648. Although the Veteran has expressed trouble working with co-workers during his time period during full-time work, and that such contributed to his being forced into retirement, the evidence does not suggest, nor does the Veteran appear to be alleging, that he was unable to secure or follow a gainful occupation prior to May 31, 2013. 
Notably, at his June 2010 VA examination, the Veteran reported that he had no problem with getting along with his co-workers. He was mostly independent. He claimed that his bosses described him as “odd” and although he had been reprimanded by his bosses, he had never been fired or quit because of his attitude. The Veteran worked as a product manager and had been present in this position for three years. He worked for the same company for 11 years and missed a couple days of work due to emotional problems. The Veteran reported that he was working full-time. 
VA treatment records dated from November 2010 through November 2011 note that the Veteran had undergone many job changes while working in the software industry. He reported that he usually worked 10-hour days, but spent much of his time reading and learning. He felt that even after he retired, he would still have to do some sort of work. 
At an April 2012 VA headache disability benefits questionnaire (DBQ), the Veteran reported that his service-connected headaches impacted his ability to work as he became disabled when he had a headache. 
A June 2012 VA treatment record noted that the Veteran was slowly adjusting to the idea of retirement and began working on retirement related projects. In October 2012, he reported that he worked for a large computer company and that he worked alone doing business analysis. An August 2014 record noted that the Veteran retired in May 2013. He indicated that he continued to do some work for his prior employer and he did some consulting work for an educational organization. 
The Veteran has not alleged that his full-time employment prior to May 2013 was in a protected environment, and there is no indication in the file suggesting as much. The Board therefore will focus the remainder on the analysis as to whether a TDIU may be awarded at any time from June 1, 2013 to the present day.
At its core, the Veteran and his attorney argue that although the Veteran as been able to work part-time as an independent contractor since June 1, 2013, earning wages above the poverty level, such employment should be considered “marginal” because to do his job, he must be granted accommodations, to include flexible work hours, telework, and office space apart from others when not teleworking. It has been suggested that he is employed by a friend, and that he may lose his job if this individual retires. 
The Board initially notes that there is no question the Veteran’s service-connected disabilities have a severe impact on his ability to function. His psychiatric disability alone is rated 70 percent disabling, and his combined rating is currently at 90 percent. That stated, with respect to the unique question at issue, the evidence of record demonstrates that the Veteran retains the capacity to work in a substantially gainful occupation, and has been doing so since he stopped working full-time in May 2013. 
During his June 2015 VA PTSD examination, the Veteran symptoms included disturbances in motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a worklike setting; and inability to establish and maintain effective relationships. He reported that for the past two years, he was doing technology work at a school to do something after he stopped working in May 2013. He felt that his current work and his projects served as effective coping strategies and kept him engaged. He added that he did not relate well with others at work and preferred to work alone. 
A June 2015 VA treatment record noted that the Veteran reported that he was working on an accounting project at work and was looking forward to leaving his medical appointment to go to the school and resume working on that project. 
In July 2016 correspondence, he indicated that he resigned from his job to become an independent contractor mainly due to his PTSD.
A January 26, 2016 VA Behavioral Medicine/BHL Progress Note indicates that the Veteran was working, at that time, 50 hours per week, which was taking a toll on his body, although he enjoyed working. Subsequent VA treatment records include an October 2016 record in which the Veteran indicated that he worked about three days per week. He enjoyed his work and saw it as giving him purpose to his life. On a March 2017 mental health note, it was reported that he had positive experiences at the school where he worked on a part-time basis. He described several situations in which he was instrumental in helping the school develop programs to help with their budget. He stated that he appreciated the positive experiences he had with his colleagues at his school. In April 2017, he reported that he had enough energy to do his job, which he enjoyed very much. He explained that he could work at his own pace and his supervisor appreciated his work. In June 2017, he indicated that he continued to enjoy his work at the school and worked three days a week. He claimed that he was busier over the summer than during the school year because he helped set up a computer program for summer education for the teachers. A September 2017 mental health note reported that the Veteran enjoyed the last couple of weeks because he was involved in a couple of projects at his work. He discussed the pleasure, support, and respect that he received from his part-time job and he reported that he felt like he may never retire. In November 2017, the Veteran stated that he was now working four days a week at the school. In January 2018, he reported that he continued to feel that his job was important as it kept him grounded and occupied his time, so he did not fixate on negative thoughts. 
In a March 22, 2018 VA Psychiatry Attending Note, the Veteran reported he is happy at work, noting he is given increased assignments and projects. On April 5, 2018, at a VA Therapy session, the Veteran reported that he sees as positive his relationships with several of the people with whom he works. The VA physician noted that he gets much satisfaction, and feels what he does has purpose since he has been part of the development of the school where he works. He says the school works with children who have learning problems, and talked at length about his role and the positive aspects of the school. He stated he is also teaching a class at a local university and enjoys that. 
On a May 2018 VA PTSD disability benefits questionnaire (DBQ), the Veteran reported that he was anticipating the loss of his job due to the upcoming retirement of the owner of his company. His symptoms included difficulty in establishing and maintaining effective work and social relationships and difficulty adapting to stressful circumstances, including work or a work like setting. The Veteran stated that he was doing worse due to anticipated loss of employment. In an associated opinion, the examiner stated that the Veteran’s employability was questionable as his current job may end shortly and the Veteran was likely to have difficulty obtaining other employment due to his level of anxiety and depression. 
In support of his claim, the Veteran has submitted assessments from Dr. H.H.G., Ph.D., and Dr. S.G.B., Ph.D., as well as a statement from his employer.
In a July 2016 evaluation Dr. H.H.G. found that the Veteran could have difficulty with concentration three or more times per month, be absent three or more times per month, and needed to leave work early due to symptoms three or more times per month. Dr. H.H.G. concluded that the Veteran’s PTSD symptoms hindered him from maintaining substantially full-time employment. 
In August 2016 correspondence from Dr. S.G.B., a private certified vocational evaluator and rehabilitation counselor, she summarized the relevant evidence and reported that the Veteran was of retirement age and currently worked as a part-time IT contractor at a local school for a friend, but was able to work in isolation of others, had a flexible schedule, and determined when he wanted to work. She stated that this was considered accommodated work. Dr. S.G.B. noted that the Veteran and his current employer described how the Veteran’s work as an independent contractor allowed him flexibility in his schedule and the ability to work in isolation of others. Dr. S.G.B. found that the Veteran was “totally and permanently” precluded from performing work at a substantial gainful level (unless he was in an accommodated and modified work setting) due to the severity of his service-connected PTSD with depression and anxiety, migraines, chronic renal insufficiency with hypertension, tinnitus, and bilateral hearing loss. 
In August 2016 correspondence, the Veteran’s employer noted that the Veteran works as an independent contractor and performed work on an as-needed basis. She stated that having employed and worked with the Veteran in the past, she was aware of his work ethic and ability to work with minimum supervision. She claimed that most of the Veteran’s duties were technical in nature and could be done without assistance from the staff. The position required minimum contact with the school children or faculty. As an independent contractor, the Veteran had the flexibility to work the hours and days he deemed necessary to accomplish the work he was contracted to perform. He did not have a fixed schedule, but typically worked 16 to 24 hours a week and was paid on an hourly basis. His work hours were decreased during the summer and school breaks. 
In June 2018, the Veteran submitted his Social Security Statement dated in August 2016 that showed that the Veteran made $63,648 in 2013, $27,379 in 2014, and $23,356 in 2015. No income information has been submitted for 2016 forward.
In a July 2016 statement, the Veteran indicated that he chose to become an independent contractor mainly due to his PTSD and work requirements. As an independent contractor, he was not required to follow specific instructions, would set the hours and days he could work, and was not be held to the same requirements of an employee. He claimed that he also needed to have control of his work environment and had minimal contact with others. 
Upon consideration of the evidence above, it is clear that the Veteran has the technical skills to work in IT. He is a trained professional, and has a background as a product manager and IT consultant. Even on a part-time basis, he has successfully contributed to solving several administrative projects at the school that hires his services. As of April 2018, he was teaching a course at a local university.
Additionally, even on a part-time basis, he has earned a salary above the poverty line. Neither he, nor his attorney alleges he makes below the poverty thresholds. 
As noted above, the key question here, as argued by the Veteran and his attorney, is that his employment should be considered “marginal” because is it should qualify as a protected work environment (such as a family business or sheltered workshop), as referenced in 38 C.F.R. § 4.16(a). If the evidence or facts reflect that a veteran is capable only of marginal employment, he is incapable of securing or following a substantially gainful occupation and is therefore entitled to TDIU if his service-connected disabilities are the cause of that incapability. See Cantrell v. Shulkin, 28 Vet. App. 382, 387-88 (2017).
The Board recognizes that “protected environment” has not been defined by regulation. Merriam-Webster’s Collegiate Dictionary offers several definitions of the word “protect,” but one that appears to be applicable in this inquiry is “to save from contingent financial loss.” See Merriam-Webster’s Collegiate Dictionary, Eleventh Edition (2003). “Contingent” can mean “likely but not certain to happen: possible.” Id. Thus, within the context of awarding a TDIU—a benefit specially meant to compensate those with earning capacity below the poverty threshold due to service-connected disabilities—a protected work environment exists when one’s employment is not based on merit alone, but rather is established to save the individual from likely financial loss. In other words, a protected environment is an employment environment that would not exist, but for the willingness of the employer to hire and pay the employee for altruistic or personal reasons. 
The fact that the Veteran is an independent contractor, in and of itself, does not mean he works in a protected environment, as it is the nature of the job to allow for autonomy, independence and flexibility in hours and location. The Internal Revenue Service defines “independent contractor” as a person who is in an independent trade, business, or profession in which they offer their services to the general public. Generally, an individual is an independent contractor if the payer has the right to control or direct only the result of the work and not what will be done and how it will be done. See https://www.irs.gov/businesses/small-businesses-self-employed/independent-contractor-defined. According to the Bureau of Labor Statistics (BLS), there were 10.6 million independent contractors working in the U.S. in May 2017. The BLS regularly refers to independent contract work as an “alternative employment arrangement.” See Contingent and Alternative Employment Arrangements Summary at https://www.bls.gov/news.release/conemp.nr0.htm, released June 7, 2018. 
Although it may be true that the Veteran’s service-connected disabilities limit his employment options to independent contractor work, and although the profession offers a flexibility that allows individuals to work on their own, the profession exists as an alternative employment arrangement and is not in and of itself a protected work environment. 
Thus, while the Board recognizes that throughout the appeal period, the Veteran has shown reluctance, and at times, and inability, to socialize and work with other people, the fact that he has secured an alternative employee arrangement, which by its very nature of being “independent” allows him to work and earn a yearly income sufficient to qualify as gainful under VA’s regulations, does not mean that the Veteran has been protected in any way. In this connection, insofar as Drs. H.H.G. and S.G.B. equate the Veteran’s independent contractor work with accommodated, sheltered or protected work, simply because it is the type of work permissive of flexible work hours and working on one’s own, the Board affords the opinions little probative weight. 
While the Veteran’s employer is indeed a friend, her letter concerning the Veteran does not indicate that her hiring of the Veteran is based on altruism or personal reasons. Rather, she demonstrates in her letter that the Veteran is in fact trusted to perform, and indeed does perform at a level commensurate with his abilities and hours. She states that he works on an as-needed basis. She spoke highly of his work ethic, and his ability to work with minimum supervision. He performs technical work, that can be done without assistance from the staff. She specifically states that the Veteran, “as an independent contractor” has the flexibility to work the hours and days he deems necessary to accomplish the work contracted to perform. He has the option to tele-commute or work on the school premises. The Veteran requested a small office away from classrooms and school activity in the administrative wing of the school, and such was granted. The Veteran’s employer in no way intimates that the Veteran is employed for altruistic or personal reasons, to save the Veteran from likely financial hardship or loss. The Veteran provides technical services, for which he is qualified, and successfully delivers work product deemed necessary and advantageous to his employer. 
Based on review of the medical evidence described above, the Veteran has chosen to work at times three days a week, four days a week, or up to 50 hours per week, depending on the project needing completion. He has regularly indicated that the work he performs improves school operations, and he is recognized for it. He states his supervisor has appreciated his work. He is paid on an hourly basis, and is not paid for work he does not do. The records above demonstrate that the Veteran does come into the office when necessary, and has established a working relationship with his co-workers. There is no indication that the Veteran’s employment, as contracted with the school, is preserved to protect the Veteran in any way.
The Board recognizes the recent opinion of the May 2018 VA examiner that if he does lose his job when/if his employer leaves, he may have difficulty obtaining other employment due to his level of anxiety and depression. At this point there is no indication the Veteran has lost his job, or that he would otherwise be unable to secure and follow gainful employment, considering his IT and product management training and education. He has demonstrated an ability succeed as an independent contractor, and has recently taken on other types of employment—namely, a teaching job with a local university. 
In sum, the evidence of record demonstrates that throughout the period under review, the Veteran has been gainfully employed, and he remains gainfully employed. 
Finally, the Board recognizes that it remanded this case in October 2016, in part to have a Vocational Rehabilitation specialist determine the impact the Veteran’s service-connected disabilities have on his ability to obtain or retain employment. The AOJ did not obtain this assessment, but rather obtained an opinion from a VA mental health examiner as to the impact his service-connected psychiatric disability has on his ability to work, as discussed above. Although the Board must ensure compliance with its remand instructions, the Board finds that in this case, such a specialized opinion is no longer necessary, as evidence dated since October 2016—to specifically include records of ongoing medical treatment dated through April 2018, and records of income—confirms that the Veteran is in fact gainfully employed as an independent contractor and teacher, working part-time, with an income above the poverty line, in an environment that is not deemed to be protected. There remains no open medical question as to the degree of impairment caused by service-connected disabilities, and the Board, as finder-of-fact has sufficient evidence to decide the appeal. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2015) (the ultimate issue of whether TDIU should be awarded is not a medical issue, but is a determination for the adjudicator). 

(Continued on Next Page)
In making this determination, the Board is in no way minimizing the degree to which the Veteran’s life has been impacted by his service, and his service-connected disabilities. The facts of this case show that to date, the Veteran is able to secure and follow gainful work in spite of these difficulties. Should circumstances change, the Veteran is always free to reapply for the benefit sought. 
 
V. Chiappetta
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD L. Crohe, Counsel